**RODGERS v. BOLAND et al.**
**Civ. A. No. 9169.**

United States District Court
E. D. Pennsylvania.

Aug. 14, 1950.

508

Philip Dorfman, Philadelphia, Pa., for plaintiff.

Thomas F. Mount (of Rawle & Henderson), all of Philadelphia, Pa., for defendants.

GRIM, District Judge.

Plaintiff, a merchant seaman, brought this action under the Jones Act[1] for personal injuries sustained, according to the allegations of the Complaint, as a result of defendants' negligence and the unseaworthiness of the vessel, the S.S. Archibald Mansfield. The case was tried before a jury, which returned a verdict for plaintiff in the sum of $15,500. Defendants then filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial, which is the matter now before the court.

Plaintiff is thirty years old and had been a merchant seaman since 1944, having been employed successively as a wiper, oiler, and fireman-watertender. Beginning in 1936, plaintiff had worked in garages and filling stations. For two years prior to going to sea in 1944, while employed as an aircraft electrician, he had been required to use kerosene and carbon tetrachloride for cleaning motors, without experiencing any harmful consequences to the skin on his hands.

Plaintiff joined the S.S. Archibald Mansfield in March, 1947, at Seattle as a fireman-watertender. It was part of his duties to clean the oil burners with kerosene each watch. He completed two voyages and began the third voyage on this vessel in July, 1947, at Norfolk. On the first two voyages he had drawn kerosene with which to clean the burners from a tank in the engine room which was situated beside other larger tanks, one of which contained a fuel oil treatment (commonly known as a sludge cutter) and was marked "fuel oil treat".

On the third voyage, immediately after leaving Norfolk, the first assistant engineer filled the tank formerly containing the fuel oil treatment with kerosene and directed plaintiff to draw all his kerosene from that tank (hereinafter referred to as the tank), from which the marking "fuel oil treat" had been removed. A few days later, plaintiff developed blisters on his hands which he showed to David E. Jones, his superior, the third assistant engineer. Jones, suspecting that the kerosene was the cause of plaintiff's eruptions, drew a sample of kerosene from the tank and noticed that it had a different color and odor than pure kerosene. He took this sample and a sample of pure kerosene to the first assistant engineer who immediately locked up the tank.

Plaintiff received treatment on the vessel, but his hands did not improve. Upon his discharge from the vessel on September 3, 1947, he entered the Baltimore Marine Hospital, where he remained until March 15, 1948, at which time his hands were entirely cleared up. On discharge from the hospital he was advised by the doctors to change his occupation (in order to avoid further contact with fuel oils) and was pronounced fit for duty in sixty days.

On May 25, 1948, plaintiff joined the S.S. Sir John Franklin as oiler and was subsequently made the ship's electrician. He remained on that vessel continuously, except for two weeks vacation, until September 5, 1949. He next sailed on the S.S. Golden

1. Act of June 5, 1920, C. 250, Sec. 33, 41 Stat. 1007, 46 U.S.C.A. § 688.

State from October, 1949, to December 19, 1949, when the voyage terminated at Norfolk. His duties on both the Franklin and the Golden State necessitated his using kerosene and carbon tetrachloride. During the time he was employed on these two ships his hands again broke out, but he was fully able to perform his duties.

After being discharged from the Golden State in Norfolk, plaintiff went to Houston. There on January 4, 1950, he registered at the Seaman's Hall for a position on a ship. He waited in Houston until January 15, 1950, but he did not obtain a ship job. He then went to his home in Menard, Texas, where he took a job with a construction company in which he now receives a salary of $150 per month. It is important to note that plaintiff testified that he did not know whether or not he could have obtained a ship job in January, 1950,[2] and that the condition of his hands was not so painful that he could not resume his previous work on a ship, if he could obtain a job.[3] He was never rejected for a position on a ship, subsequent to his injury, by reason of his hands being broken out. In fact, he passed physical examinations for three foreign voyages while employed on the Franklin.[4]

At the time of the injury and initial eruptions on his hands, plaintiff was earning $197.50 per month. After he was released from the Baltimore Marine Hospital in May, 1948, he earned more than he had before the injury. Working at the rating of electrician, at which he made about $280 per month, plus overtime, he earned $4,094 in the year 1949.

There was clearly sufficient evidence to be submitted to the jury upon which it could find that defendants were negligent in that their servant, the first assistant engineer, (1) failed to inspect and clean the tank before directing plaintiff to use its contents and (2) provided plaintiff with, and directed him to use, kerosene contaminated with a harmful chemical compound (fuel oil treatment), and that the injury of plaintiff's skin was proximately caused by his coming in contact with the contaminated kerosene while he was engaged in the business of his employers, the defendants.

Plaintiff claimed damages not only for the past loss of income and for the pain, suffering, and inconvenience resulting from the initial eruptions (contact dermatitis) on his hands, but also for the sensitization of his skin to kerosene and other solvents which are required to be used by a ship's electrician or fireman. Indeed, the far larger part of plaintiff's claim is predicated on a partial future loss of income resulting from a permanent curtailment of earning power caused by the sensitization of his skin.

Evidence sufficient to have the case submitted to the jury was introduced through the testimony of plaintiff, the deposition of David E. Jones which was read to the court and jury, and those answers to plaintiff's interrogatories which were admitted into evidence. The secondary and corroborative testimony given by plaintiff's expert witnesses, an analytical chemist and a dermatologist, was instructive, but not essential to plaintiff's case, for a prima facie case had already been made out before they were called upon to give their expert testimony. Consequently, an extensive discussion regarding defendants' exceptions to the admission or refusal to strike certain portions of the expert testimony is not necessary. Suffice it to say that a careful reading of the notes of testimony has revealed no substantial error in the admission of any of the expert testimony.

Aside from the argument that the verdict was excessive and the arguments discussed above, all the other errors assigned by defendants, with respect to the admission of portions of plaintiff's testimony and the refusal to charge the jury as requested in defendants' sixth and seventh points for charge, are in substance based on the argument that the court erred in admitting evidence concerning plaintiff's illness on vessels not owned by defendants, after May 25, 1948. On page 109 of my charge to the

2. Notes of Testimony, J. C. Rodgers, p. 67.

3. Id. at p. 65.

4. Id. at pp. 53, 54.

jury, I made quite clear the limited purpose for which this evidence had been admitted, saying:

"I want to call your attention to the fact that after the plaintiff left the ship he went out on two other ships * * * and in his experience on those ships he found that his hands again had this trouble. * * *

"* * * But that doesn't make this particular defendant responsible for anything that may have happened to him on those ships. This defendant isn't liable for any infection that may have come from those other two ships. That testimony was put into the record in this case for the purpose of showing that the plaintiff here was susceptible to this type of breaking out * * * and that is the only reason that is put into the case. It isn't put into the case to give the plaintiff damages for these particular injuries, because plaintiff isn't entitled to damages for these particular injuries."

Defendants' fifth reason for requesting a new trial, namely, that the verdict was grossly excessive, has much merit. It is obvious that the $15,500 verdict was largely for future loss of income because of diminution of earning power brought about by plaintiff's inability to handle satisfactorily a job in which his hands come into contact with kerosene and other solvents. The sensitivity of his skin has no significance in other types of jobs. It is clear, however, that the diminution of earning power is not very great. After the sensitivity of the skin had been created during the voyage on the Archibald Mansfield, plaintiff, after a physical examination, took a job on the Sir John Franklin, which job was similar to the one he had on the Archibald Mansfield. He took this second job in May, 1948, and continued on it until September, 1949. His skin trouble re-occurred during his service on this second ship, but apparently the skin trouble was not very disabling because he served on this second ship for 16 months and after he left the second ship he took a similar job on another ship, where he served two months longer. On these ships, although suffering from his skin condition, he earned considerably more than he had earned before his skin trouble arose. He admitted in his testimony that his skin erup-

tions were not so painful or disabling that they would prevent him from taking a job aboard ship if he could get such a job.

A trial judge should disturb a jury's award of damages only with great reluctance, but there are occasions when this must be done, and, in my opinion, this is one of these occasions. The principal item of damage in this case, namely, diminution of earning power, is not sufficiently great to support a verdict of $15,500. In my opinion, any award in excess of $10,000 is improper.

### Order

And now, this 14th day of August, 1950, in accordance with the foregoing opinion, it is ordered that the motion of defendants, John J. Boland, John J. Boland, Jr., Adam E. Cornelius and Adam E. Cornelius, Jr., trading as Boland and Cornelius, for judgment notwithstanding the verdict be and it is hereby denied, and that the motion of defendants for a new trial is granted unless plaintiff, James C. Rodgers, within ten (10) days after service of this order, shall, in a writing filed with the Clerk of the United States District Court in and for the Eastern District of Pennsylvania, remit all damages above the sum of $10,000.